**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **DATATERN, INC.,** | § | |
| Plaintiff, | § | |
| | § | No. 2:10-cv-133-TJW-CE |
| vs. | § | |
| | § | **JURY TRIAL DEMANDED** |
| **STAPLES, INC.,** *et al.*, | § | |
| Defendants. | § | |

**DEFENDANTS' MOTION TO STAY**

Defendants Staples, Inc. ("Staples"), J.C. Penney Company, Inc., J.C. Penney Corporation, Inc. (jointly "J.C. Penney"), Sears Holdings Corporation, and Sears, Roebuck and Co. (jointly, "Sears") (collectively, "Defendants") respectfully request that this case be stayed pending resolution of two related declaratory judgment actions filed by the manufacturers of the software products that allegedly infringe the patents-in-issue.

## I.   INTRODUCTION

DataTern is a serial plaintiff in this district and has no operations other than prosecuting lawsuits and licensing its patents. Since 2008, DataTern has filed at least nine patent infringement lawsuits in this Court against over 130 defendants. Three of those lawsuits remain pending in this Court: the instant *Staples* action, the *Eli Lilly* action,[1] and the *Abbot Laboratories* action.[2] Upon filing of this motion, the Court has now been requested to temporarily halt proceedings in all three of these DataTern cases pending resolution of the manufacturers' declaratory judgment actions.[3] It would serve judicial efficiency and conserve judicial resources

---

[1] *DataTern, Inc. v. Eli Lilly and Company, et al.*, No. 2:10-cv-413-TJW in the United States District Court for the Eastern District of Texas.

[2] *DataTern, Inc. v. Abbott Laboratories, Inc., et al.*, No 2:11-cv-203-TJW in the United States District Court for the Eastern District of Texas.

[3] In response to the *Eli Lilly* defendants' motion to stay, DataTern argued that a stay would impose this case on another forum with no experience with the patents in suit. In another context, this Court recently stated that the

to allow the lawsuits filed by the manufacturers -- the "real defendants" -- to proceed to judgment first.

In the instant *Staples* case, DataTern alleges that Staples, J.C. Penney, and Sears -- all customers who allegedly use products manufactured by Microsoft Corporation ("Microsoft") and/or SAP AG and SAP America, Inc. (jointly, "SAP") -- infringe its patents.  The declaratory judgment actions seek findings of invalidity and noninfringement as to the identical patents and products at issue in this case.  Under the customer-suit doctrine, the Microsoft and SAP actions take precedence and priority over this case, and a stay is proper to give the manufacturers the opportunity to resolve the primary dispute with Plaintiff.  Because a judgment in the manufacturers' cases could entail a global, rather than piecemeal, resolution of all pending DataTern litigation in this Court, this case should be stayed.

## II.   PROCEDURAL HISTORY IN CUSTOMER ACTION

On April 19, 2010, Plaintiff filed its Complaint for Patent Infringement against twenty-four defendants in this suit (the "Customer Action").  The complaint alleges infringement of U.S. Patent Nos. 5,937,402 ("'402 Patent") and 6,101,502 ("'502 Patent")(jointly, the "Patents In Issue").

On June 11, 2010, J.C. Penney filed its Original Answer and Counterclaim seeking a declaratory judgment of invalidity and noninfringement.  On June 16, 2010, Sears and Staples each filed an Original Answer and Counterclaim seeking a declaratory judgment of invalidity and noninfringement.  Staples, J.C. Penney, and Sears are the only remaining defendants in this case and jointly move for this stay.

---

"familiarity and experience" of the this Court with the patents in issue did not militate against transfer given the impending retirements of the presiding district and magistrate judge.  *Rembrandt Vision Techs. LP v. Johnson & Johnson Vision Care, Inc.*, Civ. No. 2:09-cv-0200 (E.D. Tex. July 19, 2011) (order).

Under the Amended Docket Control Order, the *Markman* briefing does not begin until January 2012 and the hearing is not scheduled to take place for eight months (March 28, 2012); the trial setting is almost two years away (May 6, 2013).

### III. PROCEDURAL HISTORY IN MANUFACTURER ACTIONS

On April 7, 2011 and April 18, 2011, Microsoft and SAP (collectively the "Manufacturers"), respectively, filed complaints seeking declaratory judgments that the Patents In Issue are invalid and that neither Microsoft, SAP, nor their products have infringed, induced others to infringe, or contributed to the infringement by others. Exhibits A and B, ¶ 1.[4]

The Microsoft Action and the SAP Action (collectively, the "Manufacturer Actions") allege that DataTern has instituted a series of multi-defendant lawsuits alleging infringement by customers through the use of products manufactured by Microsoft and SAP, respectively. Exhibit A, ¶ 1; Exhibit B, ¶ 2. Microsoft and SAP seek declaratory judgments to remove the clouds over their products and prevent further injury to their businesses, customers, and business relationships. Exhibit A, ¶ 1; Exhibit B, ¶ 3. The Manufacturer Actions have been consolidated for all purposes. DataTern has moved to dismiss the Manufacturer Actions.

### IV. ARGUMENT & AUTHORITIES

**A. The Manufacturer Actions involve the same patents, the same technology, the same products, and the same infringement allegations as the Customer Action.**

In the Customer Action, DataTern asserts infringement claims against end-use customers. The Manufacturer Actions directly counter Plaintiff's allegations of infringement and seek

---

[4] *See Microsoft Corporation v. DataTern, Inc.*, Cause No. 1:11-cv-02365 in the United States District Court for the Southern District of New York (the "Microsoft Action"); *see also SAP AG and SAP America, Inc. v. DataTern, Inc.*, Cause No. 1:11-cv-02648 in the United States District Court for the Southern District of New York (the "SAP Action"). True and correct copies of the Microsoft Complaint and the SAP Complaint are attached hereto as Exhibits A and B to Exhibit 1 (Declaration of Tonya M. Gray).

judicial resolution of claims based on the same patents, the same technology, and the same products involved in this case.

### 1. The Patents In Issue

This action alleges infringement of the '402 Patent, entitled "System for Enabling Access to a Relational Database from an Object Oriented Program." Plaintiff contends that Staples, J.C. Penney, and Sears infringe the '402 Patent by methods practiced on the companies' respective websites through use of logical tables and logical keys to facilitate interaction between user applications and a relational database. Complaint, Dkt. #1, ¶¶ 30-34.

This action also alleges infringement of the '502 Patent, entitled "Object Model Mapping and Runtime Engine for Employing Relational Database with Object Oriented Software." Plaintiff contends that Staples and Sears infringe the '502 Patent by methods practiced on their websites through use of object oriented software applications that rely on mapping information between a relational database and an object model, and a runtime engine for invoking one or more objects with information from a relational database. Complaint, Dkt. #1, ¶¶ 55-59.

### 2. Microsoft and ADO.NET

According to Plaintiff's Infringement Contentions,[5] Defendants infringe Claim 1 of the '402 Patent by using ADO.NET (ActiveX Data Object for .NET), a set of computer software components that programmers can use to access data and data services. ADO.NET (a technology, not an internet website) is a software product manufactured by Microsoft. Ex. A, Microsoft Complaint, ¶ 26.[6]

The Microsoft Complaint relates directly to DataTern's actions and allegations against Defendants. It quotes from the Infringement Contentions in this action, references the accused

---

[5] A true and correct copy of the Infringement Contentions is attached hereto as Exhibit C to Exhibit 1.

[6] *See also* Microsoft's description of ADO.NET at http://msdn.microsoft.com/en-us/library/aa286484.aspx.

technology, and seeks a declaratory judgment that Microsoft's products (including ADO.NET) do not infringe the Patents In Issue. Ex. A, Microsoft Complaint, ¶¶ 22-26. Microsoft also seeks a declaration of invalidity for the Patents In Issue. *Id.*, ¶¶ 32-37.

### 3. SAP and BusinessObjects

According to the Infringement Contentions, Sears and Staples infringe Claim 1 of the '502 Patent by using BusinessObjects enterprise development software ("BusinessObjects"). BusinessObjects is a software product manufactured by SAP. Ex. B, SAP Complaint, ¶ 1.[7]

The SAP Complaint relates directly to DataTern's actions and allegations against Defendants. It cites to Plaintiff's Infringement Contentions, references the accused technology, and seeks a declaratory judgment that SAP's products (including BusinessObjects) do not infringe on the Patents In Issue. Ex. B, SAP Complaint, ¶¶ 28-29. SAP also seeks a declaration of invalidity for the Patents In Issue. *Id.*, ¶¶ 35-42.

### B. The Court Has Inherent Power to Stay the Customer Action Pending Resolution of the Manufacturer Actions.

A district court has the inherent power to control its own docket, including the power to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254, (1936); *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). Optimal management of a court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis,* 299 U.S. at 254-55. In deciding whether to stay litigation, courts typically consider: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Soverain*, 356 F. Supp. 2d at 662. A stay is appropriate under all three of these factors.

---

[7] *See also* SAP's description of the software at http://www.sap.com/solutions/sapbusinessobjects/index.epx.

First, a stay will not unduly prejudice or disadvantage DataTern.  In fact, DataTern on its own volition plans to seek reexamination of the '402 Patent and has asserted the impending reexamination in support of staying the Manufacturer Actions.[8]  DataTern has told the New York court that it is "preparing and will shortly file a request for reexamination of the '402 patent."[9]  DataTern asserts that the impending reexamination of this patent is sufficient grounds for the New York court to stay the Manufacturer Actions.  DataTern has also argued that a stay does not establish prejudice, and that "reexamination will focus the issues in this case."  Although DataTern has yet to apprise this Court of its intention to seek reexamination of the '402 Patent, Defendants assert that DataTern's impending request for reexamination further supports a stay of this case. Further, DataTern's business activities would not be prejudiced by a stay because it is not a competitor of Defendants and conducts no business other than licensing its patents.[10]

Second, a stay will simplify the issues in this case.  If the Manufacturers prevail and DataTern's patents are found invalid and/or not infringed, DataTern would be collaterally estopped from asserting its patents against the Manufacturers' customers.[11]  On the other hand, if DataTern prevails and the Manufacturers compensate it for its sales through a judgment or license then DataTern's claims against Defendants are mooted either through an express license or through the doctrine of patent exhaustion.[12]  In addition, DataTern concedes that

---

[8] A true and correct copy of DataTern's motion to stay or alternatively dismiss filed in the Manufacturer Actions is attached hereto as Exhibit D to Exhibit 1.

[9] *See* Exhibit F at 7.

[10] *See Microlinc, LLC v. Intel Corp.*, No. 2:07-CV-488-TJW, 2010 U.S. Dist. LEXIS 99255, at *10 (E.D. Tex. Sept. 20, 2010) (stating that because plaintiff "does not manufacture or sell any products, or otherwise practice the patent, there is no risk of customer losses or of injury to market share during a stay").

[11] *See Meador v. Oryx Energy Co.*, 87 F. Supp. 2d 658, 663-65 (E.D. Tex. 2000) (applying claim and issue preclusion because suit was "based upon the same claims and raise[d] the same issues" as a previous suit); *see also infra* note 12.

[12] *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864-66 (Fed. Cir. 2006) (holding that a patentee is precluded from collecting damages from a customer when the patentee already collected from the manufacturer).

reexamination of the '402 patent will simplify the issues in question in the Manufacturer Actions. In the Manufacturer Actions, DataTern has told the New York Court: "If the reexamination proceeding invalidates or narrows a claim or claims, the issues will be simplified. Similarly, if the reexamination proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims." *Softview Computer Prods. Corp. v. Ergo View Techs., Corp.*, No. 97-8815, 2000 U.S. Dist. LEXIS 11274, at *9-10 (S.D.N.Y. Aug. 9, 2000) (cited by DataTern in support of stay request, Dkt. #38 in *Microsoft Corporation, SAP AG, and SAP America, Inc. v. DataTern, Inc.*, Civ. Action No. 11-cv-02365 consolidated with Civ. Action No. 11-cv-02648 in the United States District Court for the Southern District of New York).

Third, discovery has just commenced in this case. The *Markman* hearing is eight months away, and the case is not set for trial until May 6, 2013. DataTern has deposed only one witness among the Staples, Sears, and J.C. Penney defendants; and no written discovery requests have been served. Thus, this case remains in a relatively early stage. *Southwire Co. v. Cerro Wire, Inc.*, 750 F. Supp. 2d 775, 780 (E.D. Tex. 2010) (holding that "it is still early enough in this litigation to warrant a stay -- the *Markman* hearing has not occurred, expert reports have not been exchanged, discovery is not completed, summary judgment motions have not been filed, and the Court has not begun its claim construction").

**C.     Under the customer-suit doctrine, the Manufacturer Actions take precedence over the Customer Action.**

In patent infringement cases, the customer-suit doctrine (also known as the customer-suit exception to the first-filed rule) allows a court to stay a first-filed suit against customers when the manufacturer brings a later-filed declaratory judgment action. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *Microsoft v. CSIRO*, 2007 WL 4376104, at *2 (E.D. Tex.

2007), *aff'd on other grounds*, 2008 WL 4680559 (Fed. Cir. 2008). Litigation filed against or brought by the manufacturer of infringing goods "takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz*, 909 F.2d at 1464. The Federal Circuit has expounded upon the origins of the doctrine as follows:

> At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit.... [I]t is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.

*Id.* (quoting *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)).

Underlying the customer-suit doctrine is the preference that infringement determinations should be made in suits involving the true defendant in the plaintiff's suit, *i.e.*, the party that controls the product's design, rather than in suits involving secondary parties, *i.e.*, customers. *See Codex*, 553 F.2d at 737-38. Typically, the doctrine is "applied to give priority to a manufacturer's later-filed declaratory judgment action over the plaintiff's infringement suit against the manufacturer's customers." *Ciena Corp. v. Nortel Networks, Inc.*, 2005 WL 1189881, at *9 (E.D. Tex. 2005).

The guiding principles in the customer-suit doctrine cases are "efficiency and judicial economy." *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006). Federal Circuit law controls whether the doctrine applies. *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005).

In *Katz*, the Federal Circuit applied the customer-suit doctrine as an exception to the first-to-file rule to affirm an order enjoining the patentee from continuing litigation against a customer defendant pending resolution of the litigation against the manufacturer of the accused products. *Katz*, 909 F.2d at 1464. Although the patentee argued that the customer-suit doctrine was

inapplicable because the customer defendants had not agreed to be bound by the results of the manufacturer suit, the Federal Circuit found that resolution of the manufacturer suit would resolve the major issues in the customer suit, such as the alleged infringement and validity of the patents underlying both suits. *Id.* The Federal Circuit further acknowledged that additional issues in the customer suit could remain unresolved, but concluded that the patentee's prosecution of such issues would be either advanced or mooted by the outcome of the manufacturer suit. *Id.*[13]

The facts here are nearly identical to those in *Katz*. Staying the Customer Action pending resolution of the Manufacturer Actions will prevent the wasting of judicial resources through parallel, duplicative, and potentially unnecessary litigation. It is possible and even likely that a resolution of the claims between Microsoft, SAP, and DataTern will resolve the claims between DataTern and Defendants. For example, if the Patents In Issue are found to be invalid or unenforceable, this case is moot. If Microsoft and/or SAP prove that the accused products do not infringe, DataTern's claims as to such products in this action will be resolved.

As an additional consideration, the Manufacturer Actions should take precedence because of the judicial preference that infringement determinations should be made in suits involving the true defendant in the plaintiff's suit: the party that controls the accused product's design. *Codex*, 553 F.2d at 737-38. Secondary parties, such as Defendants, have greatly-reduced knowledge of the technology in dispute, the development of the products, and the incorporation of possibly-infringing technology into such products. On the other hand, manufacturers, such as Microsoft and SAP, are primary custodians of responsive documents and control the witnesses with the most knowledge of the products.

---

[13] It is a well-settled rule that where a manufacturer has proven non-infringement or invalidity of a patent as to its products, the patentee cannot pursue an infringement action against purchasers of such products. *Kessler v. Eldred*, 206 U.S. 285, 288-89 (1907); *MGA Inc. v, Gen. Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987).

**D.     DataTern's Position in the Manufacturer Actions Further Supports a Stay.**

In response to the Manufacturer Actions, DataTern filed a motion to stay or dismiss. In that motion, DataTern concedes that it has "sued various users of Microsoft and SAP software programming tools for patent infringement" in this Court. DataTern attempts to circumvent the customer-suit doctrine by asserting that the Microsoft and SAP products are merely components of an infringing system. However, DataTern never argues -- because it cannot do so -- that but for use of the Microsoft and SAP products there would be no allegation of infringement against Defendants. In other words, the resolution of whether the Manufacturers' products infringe will necessarily impact the outcome of the Customer Action. If the Microsoft and SAP products are found not to infringe, there is no question that the processes implemented by Defendants do not infringe. Likewise, if the Patents in Issue are found to be invalid, DataTern's claims against Defendants fail as a matter of law.

Further, DataTern has told the New York court that it is "preparing and will shortly file a request for reexamination of the '402 patent." DataTern argues that the Manufacturers would not be prejudiced while awaiting the outcome of the reexamination, and that the United States Patent & Trademark Office can test the validity of the '402 Patent. Defendants assert that the reasons articulated by DataTern for staying the Manufacturer Actions support a stay of this case. DataTern should be not be permitted to argue that a stay during reexamination is proper in a case it is defending while simultaneously arguing that the reexamination is irrelevant to a case it is prosecuting. If the rationale for a stay applies to DataTern as a defendant in New York, it applies equally forcefully to DataTern as a plaintiff in Texas.

## V.     CONCLUSION & PRAYER

Granting a stay in this action will allow all parties involved to avoid undue hardship, reduce the chance that either Defendants or Plaintiff would be forced to waste time, energy, and

money on repetitive and overlapping litigation, and conserve the resources of this Court. Defendants therefore respectfully request that the proceedings in the present case be stayed until final determinations in the Manufacturer Actions are reached.


Dated: August 3, 2011     Respectfully submitted,

**ANDREWS KURTH LLP**

By:     /s/ *Tonya M. Gray*
Tonya M. Gray
Texas Bar No. 24012726
tonyagray@andrewskurth.com
Gerald C. Conley
Texas Bar No. 04664200
geraldconley@andrewskurth.com

1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 659-4400
Facsimile: (214) 659-4401

**ATTORNEYS FOR DEFENDANTS STAPLES, INC., J.C. PENNEY COMPANY, INC., J.C. PENNEY CORPORATION, INC., SEARS HOLDINGS CORPORATION, AND SEARS, ROEBUCK AND CO.**

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on August 3, 2011, Gerald C. Conley, counsel for Defendants conferred via telephone conference with Timothy Haller, counsel for Plaintiff, concerning the relief requested herein. Counsel for Plaintiff opposes the stay requested by Defendants and thus opposes this motion.

   /s/ *Tonya M. Gray*
Tonya M. Gray

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document has been served on all counsel of record via electronic mail through Local Rule CV-5(a) on this 3rd day of August, 2011.

   /s/ *Tonya M. Gray*
Tonya M. Gray